UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RALPH XAVIER PEREZ,

        Plaintiff,

v.                           Case No. 8:09-cv-261-T-33MAP

OFFICER HJORT, et al.,

        Defendants.

## **O R D E R**

This cause is before the Court on the Defendants' motion for summary judgment (See Docs. 60-67), and Plaintiff's responses in opposition to Defendants' motion for summary judgment. (Docs. 69-71). Because genuine issues of material fact are in dispute, Defendants' motion for summary judgment will be **denied.**

Background

On September 15, 2009, the Court granted Defendants' motion to dismiss all of Plaintiff's claims except his claims of excessive use of force. The Court summarized the excessive use of force claims raised by Plaintiff in his complaint:

Claims I and II - Misuse and Excessive Use of Force

Plaintiff alleges that on October 25, 2006, he was transferred from Okeechobee Correctional Institution to the Polk County Jail in Bartow, Florida, and that he was subsequently transferred to the jail in Frostproof, Florida. He claims that on October 31, 2006, he was using the day room telephone in the Frostpoof Jail when Officers Holt (Officer Hjort) and Przenkop entered the unit and asked another inmate to return to his assigned

cell. That inmate became argumentative but complied. Officer Hjort then walked over to the telephone area and without warning disconnected Plaintiff's telephone call.

Plaintiff alleges that he asked Officer Hjort why the Officer did not ask Plaintiff to terminate his call and give him the opportunity to "properly end his call." Plaintiff asked to speak to the Officer in charge. According to Plaintiff, Officer Hjort became verbally abusive and ordered him to his cell. Plaintiff claims that Officers Hjort and Przenkop followed him to his cell and when Plaintiff reached the doorway, Officer Hjort forcefully pushed him inside. Plaintiff claims that when he turned around and again asked to speak to the supervisor, Officer Hjort punched Plaintiff in the face with a closed fist. Plaintiff alleges that he raised his arms to protect himself and Officer Przenkop sprayed him in the face with a chemical agent. Then the other officers entered the cell and "joined in" beating Plaintiff with closed fists.

Plaintiff contends that he was knocked to the ground and handcuffed and that while he was "handcuffed on the ground," the officers kicked and stomped him. According to Plaintiff, Sergeant Smith "commenced to twist and bend Plaintiffs leg at the knee in an attempt to dislocate it." Plaintiff claims that he lost consciousness and when he regained consciousness he was sitting on the floor of a shower stall, fully clothed and in handcuffs, with the water running over him. He claims that he was taken to the on-duty nurse who notified her supervisor by telephone that Plaintiff "needed to be taken to a hospital." Plaintiff states that he was taken to a hospital in Bartow where he was "x-rayed, CT scanned, physically examined, and kept for a brief observation overnight by the emergency room doctor." Plaintiff alleges that on November 1, 2006, upon being released from the hospital, he was transported to the jail in Bartow and then back to Frostproof "and in direct contact

with Defendants Hjort and Yi." Plaintiff alleges that at the Frostproof Jail, he was "subjected to verbal threats and intimidation tactics to discourage" his making an official complaint.

Plaintiff states that he was transferred to Okeechobee Correctional Institution on November 2, 2006, and that the receiving prison staff "noticed Plaintiff's obvious injuries and immediately documented and photographed all visible swelling, bruises, contusions, abrasions, and an apparent bootprint."

## SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *See id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a

matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Samples on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau,* 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-5.

**DEFENDANTS' ALLEGATIONS IN THEIR MOTION FOR SUMMARY JUDGMENT**

At the time of the subject incident, Plaintiff was incarcerated at the Polk County Jail[1] and admitted in his Complaint that at some point in time he became argumentative with the

---

[1] Plaintiff was incarcerated at the Frostproof Jail in Bartow, Florida, not the Polk County Jail, at the time of the incident.

Detention Deputies. Prior to the incident, Deputy Hjort was conducting medical rounds and noticed that certain inmates who were supposed to be in a certain locked down cell were in the day room. (Affidavit of Carl Hjort) (Doc. 64). He requested that all the inmates return to their cells and all but one complied. Id. The one that did not comply was Plaintiff and he began "to get unruly." Id. Deputy Hjort made a decision to lock down Alpha dorm to complete the medication pass rounds. Id. The master control switch was thrown to turn off the phones and Deputy Przenkop called Sergeant Smith for assistance in locking down Alpha dorm. Id. Other deputies came to assist, including Deputy Yi and Deputy Cooper. Id. Plaintiff was very irritated because the phones were turned off. Id. The Detention Deputies tried to explain to everyone that the dorm needed to be locked down so that medication pass rounds could be completed. Id. While the deputies were escorting Plaintiff upstairs to his cell, Plaintiff was quite belligerent and extremely irritated. Id. When Plaintiff arrived at his cell, he refused to enter. Id. After Deputy Przenkop finished locking down cells, he joined Deputy Hjort at Plaintiff's cell. Id. Deputy Hjort and Deputy Przenkop again instructed Plaintiff to enter his cell and he refused. Id. Deputy Hjort and Deputy Przenkop then put their open flat hand on Plaintiff's chest and attempted to push him into his cell. (Affidavit of Andrew Przenkop) (Doc. 61). At that time, Plaintiff lunged toward Deputy Hjort and Deputy Przenkop and raised his hand in what appeared as an attempt to strike Deputy Hjort. Deputy Przenkop attempted to spray Plaintiff with a chemical agent, but Plaintiff avoided being sprayed. Id. Deputy Przenkop told Plaintiff to handcuff up and he spun around and came at Deputy Przenkop in an aggressive manner. Plaintiff started swinging toward Deputy Przenkop and he (Przenkop) defended himself by striking Plaintiff three times to the right side of the head with a closed fist. Id. A struggle began and eventually

Plaintiff was moved to a bottom bunk with the assistance of others. Id. The Detention Deputies attempted to handcuff Plaintiff, but he continued to struggle. Id. The chemical agent made some of the Detention Deputies ill. Id. It also made Plaintiff's torso and body very slick. Id.

Deputy Yi was assisting with the lockdown when he saw Plaintiff push a cell door open on Deputy Hjort. (Affidavit of Fernando Yi) (Doc. 62). Deputy Yi observed Deputy Przenkop attempt to spray Plaintiff with chemical agent. Id. Plaintiff was cursing and tried to swing or lunge toward Deputy Przenkop. Deputy Przenkop tried to spray Plaintiff again, but Plaintiff ran to the back of his cell. Id. He then rushed toward Deputy Przenkop and Deputy Yi. Plaintiff swung at Deputy Przenkop and he defended himself. Id. Deputy Yi and the other Detention Deputies tried to handcuff Plaintiff, but he was struggling with them. Id. When Plaintiff was on the bunk, Deputy Yi tried to pull Plaintiff's left arm out from under him to put it behind his back so they could handcuff him. Id. Eventually, Deputy Yi was overcome by the chemical agent and someone took his place. Id. After he rinsed his face, Deputy Yi returned and noticed Plaintiff was still struggling with the Detention Deputies as they tried to handcuff him. Id. Deputy Yi again assisted the other Detention Deputies and took over for someone who was also overcome by the chemical agent. Id.

Deputy Cooper was assisting with the dorm lockdown when several inmates alerted him that a fight was taking place. (Affidavit of William Cooper) (Doc. 63). He responded to cell 207 and noticed Deputy Hjort and Deputy Przenkop struggling with Plaintiff. Id. He heard numerous commands given to Plaintiff to stop resisting and be handcuffed. Id. Plaintiff did not comply with the orders given to him and continued to struggle. Id. Deputy Cooper assisted in securing Plaintiff's right arm and placed a handcuff on his right wrist.

Id. He tried to secure his left wrist, but Plaintiff jerked away from him and Cooper was unable to secure it. Id. After Plaintiff left the cell, he was placed on the floor and handcuffed. Id. Plaintiff was then escorted to medical and examined by a nurse. Id.

Sergeant Smith responded to a call for assistance in locking down Alpha dorm and when he entered the dorm and went upstairs, he saw several Detention Deputies struggling with Plaintiff. (Affidavit of Stanley E. Smith) (Doc. 65). He instructed the Detention Deputies to place Plaintiff on the floor and Plaintiff continued to struggle with them as they exited his cell. Id. Sergeant Smith had to assist the Detention Deputies in gaining control of Plaintiff. Id. He placed his right hand on the lower part of Plaintiff's right leg and his left hand on the lower part of his left leg, and with the assistance of the other Detention Deputies, they lowered him to the floor. Id. Plaintiff ignored Sergeant Smith 's instructions to put his hands behind his back. Id. Sergeant Smith tried to secure Plaintiff's legs, but Smith was overcome by the chemical agent and could no longer assist in securing Plaintiff. Id.

Lieutenant Peacock was not on duty when the incident occurred. (Affidavit of Duane Peacock) (Doc. 67) Deputy Todd Borders, who is not a Defendant, did not use any protective action against Plaintiff. (Affidavit of Todd Borders) (Doc. 66). The only thing Borders did was review the Detention Deputies' Protective Action Reports regarding the subject incident, photograph the injuries listed by the nurse, and complete Polk County Sheriffs Office Form 206a (Protective Action Form). Id.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

There are genuine issues of material fact that preclude summary judgment for the Defendants on the Plaintiff's use of force claim. Summary judgment is to be granted only

if the record before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law: Rule 56 (c), Fed. R.Civ.P. A "material" fact is one that "might affect the outcome of the suit under governing law". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

      The affidavits of the Plaintiff and the Defendants are squarely contradictory as to what force was used. The allegations in the Plaintiff's affidavit portray a completely needless use of force against an inmate who was not resisting, disorderly, or unruly, and was following the order he had been given except for simply requesting to speak to an officer in charge, covering his face to protect himself after he was punched and sprayed with a chemical agent, and running to the back of his assigned cell to keep from being assaulted further. Plaintiff has never admitted that he became argumentative with Detention Deputies as the Defendants claim in their Motion for Summary Judgment. In their affidavits Defendants claim Plaintiff lunged and attempted to swing at Defendant Przenkop. Plaintiff asserts had this happened Plaintiff would have been charged with a criminal offense as the law and jail policy dictates, or at a minimum a disciplinary report would have been written and Plaintiff would have been placed in disciplinary isolation. Instead, upon returning from the hospital, Plaintiff was placed in open population in the same housing unit where the assault took place, with no disciplinary action against Plaintiff. Defendant Przenkop further admits in his affidavit he "defended" himself by striking Plaintiff three times to the right side of the head with a closed fist and twice more on the side of the head with no explanation for the injuries on Plaintiff's left side of his head and body as is evidenced in the Florida Department of Corrections diagram of injury documented by Okeechobee Correctional Institution medical staff.

In their affidavits, Defendants admit Plaintiff ran to the back of his cell to avoid being sprayed with the chemical agent which substantiates Plaintiff's claim that the excessive force was maliciously applied for the very purpose of causing harm because at that point Plaintiff could have been locked inside the cell, and the situation contained, as Plaintiff was at a safe distance from the Defendants, presenting no threat or danger.

In their Motion for Summary Judgment Defendants state: "Admittedly, Plaintiff (and the actual Defendants who used protective action against Plaintiff) received some bumps and bruises in the scuffle". Plaintiff asserts bumps and bruises would not have amounted to a trip to a hospital emergency room for the Plaintiff to be x-rayed, CT scanned, and kept for head injury observation. There is clearly a genuine issue of fact. The factual dispute is also material under the governing law, as whether the use of force by prison staff violates the Eighth Amendment depends on whether it was "applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 998-99 (1992); *Whitlev v. Albers*, 475 U.S. 312, 320-21,106 S.Ct. 1078 (1986). The facts alleged by the Plaintiff are evidence that the Defendants were acting "maliciously and sadistically to cause harm"; they would support a jury verdict in the Plaintiff's favor. *See Miller v. Leathers*. 913 F.2d 1085, 1088 (4th Cir. 1990) (*en banc*) (retaliatory intent could be inferred from officer's action), *cert. denied*, 111 S.Ct. 1018 (1991); *Oliver v. Collins*. 914 F.2d 56, 59 (5th Cir. 1990) (Testimony that a beating was completely gratuitous and that no force at all was necessary would support a finding of malice); *Lewis v. Downs*. 744 F.2d 711, 714 (6lh Cir. 1985) (Evidence that an officer kicked a handcuffed person who was lying on the ground showed malicious motivation).

## DISCUSSION

To avoid summary judgment for the moving party, the non-movant must present properly supported "affirmative evidence" of material factual conflicts. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A prisoner may avoid summary judgment "only if the evidence viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain." *Brown v. Smith*, 813 F.2d 1187-88 (11th Cir. 1987)  "Neither the judge nor the jury is free to substitute its own judgment for that of the prison officials."   *Id.* If there is not a reliable inference of wantonness in the infliction of pain, the case should not go to the jury. *Id.* at 1189. A prisoner's conclusory allegations that a guard acted with malice are not sufficient when the actual facts will not support a reliable inference of wantonness. *Id.* at 1190 n.4.

In the present case, the material factual conflicts include whether Plaintiff refused to return to his cell when he was ordered to do so; whether Plaintiff became argumentative before being forcefully pushed into his cell; whether Plaintiff offered resistance or "disobedience" to Defendants before being punched and sprayed with chemical agents; whether the situation could have been contained once Plaintiff ran to the back of his cell; whether Defendant used force against Plaintiff in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm; whether the continued use of force against Plaintiff once he was on the ground and handcuffed was excessive; and whether Plaintiff's injuries resulted from his own act of resistance to Defendants or from their purposeful use of unnecessary force.

A reasonable fact finder evaluating the evidence could draw more than one inference from the facts. A dispute about these material facts is "genuine" because the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-5. In this case, the evidence presents a sufficient disagreement to require submission to a jury.

Accordingly, the Court orders:

1. That Defendants' motion for summary judgment (Doc. 60) is denied.

2. That on or before **May 20, 2010**, Plaintiff shall provide a telephone number at which he can be reached from the pretrial conference scheduled for **June 10, 2010, at 9:00 A.M. in Courtroom 14B of the Sam Gibbons Courthouse, Tampa, Florida** before the under signed District Judge. If the telephone number changes, Plaintiff shall be responsible for updating the telephone number.

3. That the parties shall file their pretrial narrative statements (See Doc. 48 dated October 19, 2009) on or before **June 3, 2010.**

ORDERED at Tampa, Florida, on May 4, 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Ralph Xavier Perez